FILED



MAR 24 1998

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

1  Mark Allen Kleiman
   1299 Ocean Avenue  Suite 900
2  Santa Monica, CA 90401
   (310) 393-1771
3

4  Attorney for Relator Faith Fairbrother

5

6                                                    8:98-cv-2426-T-23A

7

8                    **UNITED STATES DISTRICT COURT**

9                     **EASTERN DISTRICT OF CALIFORNIA**

10

11                                           CIV. S-98 - 0 8 9 2 FCD DAD
    UNITED STATES OF AMERICA, *ex rel*  )   CASE NO.
12  Faith Fairbrother; State of Florida *ex rel* )
    Faith Fairbrother                    )
13                                       )   ~~FILED IN CAMERA AND UNDER SEAL~~
                        Relator,         )
14                                       )   COMPLAINT FOR DAMAGES AND
       v.                                )   OTHER RELIEF UNDER THE
15                                       )   FALSE CLAIMS ACT
                                         )
16  Lincare Holdings, Inc.; MP Total Care,)
    Inc.; Parker Medical; Shawn Parker; and )
17  Does 1-100                           )
                                         )
18                      Defendants       )
                                         )
19  _____)

20

21                          **Jurisdiction and Venue**

22       1.      This is an action to recover damages and civil penalties on behalf of the United

23  States of America arising out of false claims presented by defendants under the Federal

24  Medicare Program.  The action arises under the provisions of 31 U.S.C. §3729, et. seq. and

25  10 U.S.C. §1071, et. seq.

26       2.      Section 3729(a) of the Act provides that "Any action under section 3730 may be

27  brought in any judicial district in which any Defendant may be found to reside, or transact

28  ///



1  business, or in any district in which any proscribed act has occurred. Defendant Lincare
2  Holdings, Inc., transacts business within this judicial district.
3     3.    Under the Act, this Complaint is to be filed *in camera* and remain under seal for
4  a period of at least sixty (60) days and shall not be served on the Defendant until the Court so
5  orders. The Government may elect to intervene and proceed with the action within sixty (60)
6  days after it receives both the Complaint and the material evidence and information.
7
8                            **Parties to the Action**
9     4.    Relator is a citizen and resident of the State of Florida and brings this action on
10 behalf of the United States of America. Hereafter she shall be referred to as Relator.
11    5.    As required under the Act, Relator has furnished to the Attorney General of the
12 United States and to the United States Attorney for the Eastern District of California
13 simultaneous with or prior to the filing of this Complaint, a statement of all material evidence
14 and information related to the Complaint. This disclosure statement supports the existence of
15 overcharges and false claims by the Defendants.
16    6.    Relator is a Certified Nursing Assistant and formerly held a license as a private
17 investigator. She was employed by defendant from the spring of 1993 until the fall of 1996 by
18 Parker Medical, and its successor corporation, Lincare Holdings, Inc. She discovered that
19 defendants were engaging in false and fraudulent conduct.
20    7.    Defendant Lincare Holdings, Inc. (hereinafter "Lincare") is a nationwide
21 provider of home oxygen and other similar medical equipment and supplies with offices and
22 facilities in the Eastern District of California.
23    8.    Defendant MP Total Care Pharmacy is a pharmacy licensed by the state of
24 Florida, and is owned or controlled by Defendant Lincare Holdings, Inc.
25    9.    Defendant Parker Medical Systems, Inc., was a provider of home oxygen and
26 other similar medical equipment and supplies which was located in Florida, and was purchased
27 by defendant Lincare Holdings, Inc.
28 ///

10. Defendant Shawn Parker was president and owner of Parker Medical Systems, and personally took one or more physicians on paid ski vacations to procure their business.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 100, inclusive, and each of them, are unknown to Relator who, therefore, sues these Defendants by such fictitious names and will ask leave of court to amend this Complaint when the same shall have been ascertained. Relator is informed and believes and upon such information and belief alleges that each Defendant designated herein as a Doe is responsible, for the events and happenings referred to herein which caused the submission of false claims to the United States of America, and to the State of Florida.

12. At all times herein mentioned, each of the Defendants, was an agent, servant or employee of each of the remaining Defendants, and was at all times acting within the purpose or scope of said agency or employment, and was acting with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them.

## THE MEDICARE PROGRAM

13. In 1965 Congress enacted Title XVIII of the Social Security Act ("Medicare" or the "Medicare Program") to pay for the cost of certain hospital services and care.

14. The Department of and Human Services is an agency of the United States and is responsible for the funding, administration and supervision of the Medicare Program. The Financing Administration (HCFA") is a division of that agency of the United States and is directly responsible for the administration of the Medicare Program. HCFA, in discharging those responsibilities, contracted with private insurance companies, known as intermediaries, to receive, review, and pay appropriate claims for reimbursement for the provision of home services to Medicare Program beneficiaries.

15. Eligible persons age 65 years and over may enroll in Medicare Part B to obtain health insurance benefits in return for payment of monthly premiums in an amount established by HCFA. Such individuals are known as "beneficiaries" under the program.

///

16. Part B of the Medicare Act was pay for home services for Medicare beneficiaries who were homebound and were in need of nursing and rehabilitative services, including durable medical equipment such as oxygen dispensers and ventilators.

17. When a beneficiary obtains medical services from a Part B provider the beneficiary may either pay for the service him or her self, and submit the provider's bills to Medicare for reimbursement ("unassigned claims") or the beneficiary may assign the right to reimbursement to his or her provider, in which case the provider then submits a bill to Medicare and receives the Medicare reimbursement as the beneficiary's assignee ("assigned claims").

18. Only providers who are "participants" may submit assigned claims for payment.

19. In order to become a Medicare Part B participant provider physicians and others must agree to certain conditions of participation, including, *inter alia*, the following program requirements:

    A. not to make false statements or misrepresentations of material facts concerning requests for reimbursement, 42 U.S.C. §§ 1320a-7b(a)(1)(2), 1320a-7, 1320a-7a; 42 C.F.R. § 1001.101(a)(1);

    B. to bill Medicare only for reasonable and necessary services, 42 U.S.C. §1395y(a)(1)(A);

    C. to provide economical medical services, and then, only when medically necessary, 42 U.S.C. §13320c-5(a)(1);

    D. to assure that such services are not substantially in excess of the needs of such patients, 42 U.S.C. §13320a-7(b)(6)(B);

    E. to certify that the service claimed is a medical necessity. 42 U.S.C. §1395n(a)(2)(B).

    F. Charging no more than the **actual** average wholesale price (AWP) for pharmaceuticals. 42 U.S.C. §1396r-8.

20. 42 U.S.C. §1395nn(b) prohibits referrals to any entity furnishing durable medical equipment with which the physician has a financial relationship, compensation

4

1   agreement, or from whom the physician receives any form of remuneration, including the
2   receipt of items, devices, or supplies.
3       21. The Defendants have submitted thousands of false claims resulting in millions of
4   dollars in overpayments of Medicare, Florida Medicaid, and FEHBP (Federal Employee
5   Health Benefit Program ) funds.  Defendants, and each of them sued in this cause of action
6   submitted or caused to be submitted false and fraudulent claims and records, by means of the
7   following:
8       22.   Lincare itself performed and analyzed diagnostic testing known as overnight
9   oxygen saturation testing on patients for the purpose of procuring physicians' signatures to
10  certificates of medical necessity.  Lincare concealed from Medicare the fact that it, not the
11  physician, had performed the testing.
12      23. Lincare controlled the testing done by ostensibly independent entities such as
13  Peacock Medical and Southmed Nursing by giving these ostensibly independent entities the
14  equipment and computer software instead of selling or leasing it to them at fair market value.
15      24.  Lincare artificially manipulated the test conditions in such a way as to cause
16  patients' results to show on the tests that they had a lower level of oxygen in their blood than
17  they actually did.  This was done by subjecting the patients to exercise shortly before the
18  testing.
19      25.  Lincare and its predecessor agency gave bribes and other remunerations to doctors
20  and long term care facilities to encourage them to order Lincare equipment and services.
21  These bribes, kickbacks, and remunerations, included but were not limited to the following:
22          A.   Parker Medical paid for a ski trip for Dr. King and his wife;
23
24          B.   Cash payment in the form of respiratory therapy services agreements
25               which greatly exceeded the fair market value of services to physicians
26               including, but not limited to: Romeo Guzman, M.D.; George
27               Hernandez, M.D.; and Alan Varreaux, M.D.;
28  //

5

C.  The gift or free use of medical equipment such as oximeters, nebulizers, nebulizer circuits, oxygen tanks, etc. to, *inter alia*, the following physicians and health care institutions: Louis Barroso, M.D.; Alfred Bookhardt, M.D.; Brighton Gardens Nursing Home; David Carr, M.D.; Louis Cartwright, M.D.; Ivan Castro, M.D.; Sun Chau, M.D.; * Cooke, M.D.; Francis Covelli, M. M.D.; Floyd Dillard, M.D.; Health Central Hospital; Susan Hill, M.D.; * Iveniz, M.D.; Vajih Khan, M.D.; Ashok Khanna, M.D.; * King, M.D.; Salvador Lanza, M.D. (Florida Heart Group); Mohammed Latif, M.D.; Larry Luter, M.D.; Mayflower Skilled Nursing Facility; Charles Morefield, M.D.; Nicholas Pastis, M.D.; Georgina Chan Perdona, M.D.; Robert Rosemond, M.D.; * Silva, M.D.; Robert Snyder, M.D.; Ishrat Sohail, M.D.; Eugene Vano, M.D.; Lewis Wasserman, M.D.; Linda Wasserman, M.D.; and Mark Webster, M.D.

D.  Free continuing education and OSHA compliance training courses were furnished to, *inter alia*, the following providers: Floyd Bitland, M.D.; Alfred Bookhardt, M.D.; Ivan Castro, M.D.; Sun Chau, M.D.; * Cooke, M.D.; Alan Denner, M.D.; Amy Dorn, M.D.; Yasmeen Gowani M.D.; Raj Hippelganker, M.D.; Glenn Johnston, M.D.; * Khatta, M.D.; Salvador Lanza, M.D.; * Nathanson, M.D.; Nicholas Pastis, M.D.; Scott Pollak, M.D.; Robert Rosemond, M.D.; Brent Schlapper, M.D.; Kerry Schwartz, M.D.; Ishrat Sohail, M.D.; Southmed Nursing; John Taggart, M.D.; Eugene Vano, M.D.; Mark Webster, M.D.; and the Winter Park Internal Medicine Group.

//
//

26. Lincare encouraged physicians who referred patients to Lincare to submit claims to Medicare for tests they neither administered nor interpreted by concealing the fact that Lincare itself had performed the tests, and that the computer-generated and interpreted graphs were neither produced nor analyzed by the physicians involved.

27. Lincare performed in-office testing or in-home sleep studies of patients for which physicians submitted bills. This was done for, *inter alia*, Alan Bookhardt, M.D., Gerald Kivett, M.D., and Orange County Medical Clinic, Nicholas Pastis, M.D., and Razzak Tai, M.D.

28. Lincare offered physicians free use of a "cardiac events monitor" to provide cardiac diagnostic services for which both Lincare and the physician would bill.

29. Lincare itself filled out information on Certificates of Medical Necessity (HCFA-484) forms and directed physicians as to which diagnostic codes to attest to to justify payment.

30. Lincare wrongfully caused the use of an "E" code, E1399 for "durable medical equipment, miscellaneous" to bill for oximetry. This is inappropriate because such a code may only be used for an unlisted service or procedure. As of 1996, when this Level II code was being used, there were existing Level I (CPT) codes (94760, 94761, and 94762) for these procedures. Relator is informed and believes and based thereon alleges that the defendants caused claims to be submitted under the "E" code to disguise the fact that "referring" physicians were billing for, and receiving payment under the CPT codes for the same procedures on the same patients. Lincare also used the same "E" code illegally for polysomnography, which is covered by CPT Codes 95808 and 95810.

31. Lincare directed its employees to falsify the dates upon which they received verbal orders for goods or services from physicians so as to comply with Medicare's requirement that such orders be received within thirty days of the time in which the patient was last examined or was tested for respiratory functions.

//

//

//

32. Defendants routinely charged Medicare and Medicaid beneficiaries well above the actual manufacturer price for, *inter alia*, the following items: acetyleysteine, albuterol sulfate .083%, albuterol sulfate .05%, cromolyn, isoetharine 1% per cc, isoetharine 0.17% per cc, isoetharine hydrochloride 1% per cc, metaproterenol 0.4% per unit dose, metaproterenol 0.6% 2.5 cc per unit dose, and metaproterenol 0.5% per unit dose.

33. Defendants routinely charged Medicaid and Medicare beneficiaries excessively by using the billing code J7645 for ipretropium bromide which MP TotalCare Pharmacy compounded in its own pharmacy, when this more expensive reimbursement code is to be used only for **non**-compounded drugs.

34. Lincare charged Medicare up to 250% more than it charged other payors for durable medical equipment. Lincare also charged Medicare 10% more than all other payors for commonly prescribed respiratory drugs. So favorable were the amounts charged to Medicare that Lincare offered its sales staff commissions when a doctor referred a Medicare or privately insured patient – yet such commissions were withheld when a physician referred a Medicaid patient.

35. Lincare's predecessor, defendant Parker Medical Systems, induced patients to use their services by advertising that "**FREE IN THE HOME TESTS**" were available.

36. Lincare would waive Medicare's 20% patient copay requirements for some goods and services without regard for the patient's actual ability to pay, as an incentive to have Lincare's goods and services used. In furtherance of this wrongful scheme Lincare paid its delivery drivers a $10 bonus for each patient the driver got to switch from a metered dose inhaler to a nebulizer-based unit-dose inhaler. The drivers were trained to inform patients if Lincare procured a nebulizer for them, Medicare would bear the entire cost, at no cost to the patient.

37. Lincare submitted claims for bipap equipment in deliberate disregard of knowledge that the equipment was not medically necessary.

//

//

38. Lincare deliberately refuses to pick up equipment that is no longer wanted or medically necessary, thus prolonging the period of time for which the equipment is billed. Lincare employees, upon learning that they have delivered to patients more supplies than are necessary, instruct those patients or their family members to simply throw out the excess supplies, for which Medicare has already been billed.

39. Relator is informed and believes and in reliance thereon alleges that Defendant Lincare Holdings, Inc., owned and controlled the pharmacy, MP Total Care, which improperly compounded albuterol and other substances to be used in nebulizers.

40. Relator, through her counsel, has become aware that defendant Lincare Holdings, Inc., has engaged in quite similar misconduct in Arkansas, Mississippi, and Tennessee, and based upon this similarity, alleges that the aforesaid wrongful acts were part and parcel of a nationwide pattern and practice engaged in by Lincare.

41. Relator believes that the aforesaid acts have been undertaken by Defendants since at least February, 1992, and possibly as early as February, 1989.

42. From in or about February, 1992, to the present, Defendants knowingly, or in reckless disregard of the truth, presented false claims to the United States by submitting, for Medicare beneficiaries, requests for payment for the provision of durable medical equipment that they knew were ineligible for reimbursement.

43. Defendants knowingly presented or caused to be presented to an officer or employee of the United States government false or fraudulent claims for approval to the damage of the United States.

**SECOND CAUSE OF ACTION**

44. Relator repeats and repleads and incorporates by reference each and every one of the allegations contained in paragraphs 1-41, inclusive, of the First Cause of Action as though fully set forth herein.

45. In performing the acts herein above alleged Defendants, and each of them, knowingly made, used, or caused to be made or used, a false record or statement to get a false

1 or fraudulent claim paid or approved by the Government to the damage of the Treasury of the
2 United States.

3     46. By virtue of this scheme, Defendants defrauded the United States and the
4 Medicare and Medicaid Programs of an amount in excess of Five Million Dollars.

5

## THIRD CAUSE OF ACTION

7     47. Relator repeats and repleads and incorporates by reference each and every one
8 of the allegations contained in paragraphs 1-41, inclusive, of the First Cause of Action as
9 though fully set forth herein.

10     48. Section 68.082(2)(a) Florida Statutes, prohibits established penalties for any
11 person who knowingly presents or causes to be presented a false claim or payment to any
12 Florida agency, including the Florida Medicaid program. Section 68.082(2)(b) prohibits a
13 person from knowingly making, using, or causing to be made or used a false record or
14 statement to get a false or fraudulent claim paid or approved bv an agency, or conspiring to do
15 the same.

16     49. In doing the acts hereinabove alleged, defendants, and each of them violated the
17 cited sections of the Florida False Claims Act.

18     50. Immediately upon filing this complaint relator has furnished a copy of said
19 complaint, along with a written disclosure of substantially all material evidence and
20 information in relator's possession, to the Attorney General of the State of Florida, and to the
21 Comptroller of the State of Florida.

22     51. This Court is requested to accept pendent jurisdiction of this related state claim
23 inasmuch as it is predicated upon the exact same facts as the federal claim, and merely asserts
24 separate damage to the State of Florida in the operation of its Medicaid program.

25 //
26 //
27 //
28 //

## PRAYER FOR RELIEF

### For the First and Second Causes of Action

1. Judgement against the Defendants in an amount equal to three times the damages sustained by the United States as a result of Defendants' conduct;

2. A civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each violation of 31 U.S.C. § 3729;

3. That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to 31 U.S.C. §3730(d) and/or any other applicable provision of law;

4. Attorney's fees and costs according to proof;

### For the Third Cause of Action

5. Judgement against the Defendants in an amount equal to three times the damages sustained by the State of Florida as a result of Defendants' conduct;

6. A civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each violation of Florida Stas., §§ 68.081 et. seq.

7. That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to Florida Stats. §68.085 and/or any other applicable provision of law;

8. Attorney's fees and costs according to proof;

### For All Causes of Action

9. For such other and further relief as the Court deems just and proper.

DATED: May 13, 1998

LAW OFFICES OF MARK KLEIMAN

By: _____
Mark Allen Kleiman
Attorney for Relator

11

# CERTIFICATION OF SERVICE

The undersigned certifies that on May 13, 1998, a copy of the foregoing Complaint for Damages and Other Relief and a Disclosure Statement was placed in the United States Mail, first class, postage prepaid, addressed to:

| | |
|---|---|
| Hon Janet Reno, Esq.<br>Attorney General<br>U.S. Department of Justice<br>10th & Constitution Ave., N.W.<br>Washington, D.C. 20530 | Michael A. Hirst, Esq.<br>Affirmative Civil Litigation Chief<br>United States Attorney's Office<br>555 Capitol Mall, #1550<br>Sacramento, CA 95814 |

_____
Mark Allen Kleiman, Esq.